IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMES NAFTEL, MARGARET FAY, DEBORAH KERR, and JAMES KRONBERG,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOUCAN CAPITAL FUND II, LP; MED-RELIEF, INC.; LINDA POWERS; and SCOTT SANZONE,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:09-CV-1066-BBM |

## O R D E R

This matter is before the court on the Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 6] filed by Defendant Scott Sanzone ("Mr. Sanzone"); the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. No. 7] filed by all Defendants; the Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. No. 17] filed by all Defendants; and the Motion for Permission to File a Response to Defendant Scott Sanzone's Reply Brief [Doc. No. 21] filed by the Plaintiffs.

# I.   Factual and Procedural Background[1]

On a motion to dismiss, the court accepts as true all factual allegations set out in the Plaintiffs' First Amended Complaint.  See Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).

The Plaintiffs used to work at Defendant Med-Relief, Inc. ("Med-Relief"), a Georgia corporation.  Plaintiff James Naftel ("Mr. Naftel") was employed as the president of Med-Relief; Plaintiff Margaret Fay ("Ms. Fay") was the director of clinical and regulatory affairs; Plaintiff Deborah Kerr ("Ms. Kerr") was the office manager; and Plaintiff James Kronberg ("Mr. Kronberg") was the chief engineer. Mr. Naftel, Ms. Fay, and Ms. Kerr are Georgia residents who worked in Med-Relief's office in Norcross, Georgia.  Mr. Kronberg is a South Carolina resident who worked in Med-Relief's office in Aiken, South Carolina.  Each Plaintiff's employment was terminated in February 2009.  The Defendants have failed to pay the Plaintiffs for all wages due and have not provided the Plaintiffs with any compensation for their final two pay periods.

In addition, Mr. Naftel loaned $105,670 of his own money to Med-Relief to cover expenses.  The Defendants have not repaid Mr. Naftel for any portion of the loan.

---

[1] The facts are recounted from the First Amended Complaint, and are not findings of fact by the court.

Defendant Toucan Capital Fund II, LP ("Toucan Capital") is a Delaware corporation that owns a controlling interest in Med-Relief. Toucan Capital conducts its business from an office in Bethesda, Maryland. Defendant Linda Powers ("Ms. Powers") is a Maryland resident who is employed as the managing director and co-founder of Toucan Capital. Mr. Sanzone is a Maryland resident who is employed as a principal and the chief financial officer of Toucan Capital. Both Ms. Powers and Mr. Sanzone serve as directors for Med-Relief.

The Plaintiffs brought this action on April 21, 2009 under the Fair Labor Standards Act ("FLSA") and Georgia law. They amended their Complaint on September 11, 2009. The First Amended Complaint alleges (1) that the Plaintiffs did not receive proper regular and overtime compensation; (2) that the Defendants failed to pay the Plaintiffs on a semi-monthly basis as required by Georgia law; (3) promissory estoppel; (4) unjust enrichment; and (5) money had and received.[2] The Plaintiffs request compensatory damages, pre- and post-judgment damages, declaratory relief, costs, attorney's fees for their unpaid wages claims, and any further relief that the court deems just and proper.

---

[2] The original Complaint also contained claims for recordkeeping violations under the FLSA and for conversion. These two counts were omitted in the First Amended Complaint and therefore will not be addressed in this Order.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a court may grant a motion to dismiss for lack of personal jurisdiction.  A court must have personal jurisdiction over a defendant to a legal action.  Any judgment issued by a court that lacks personal jurisdiction is void.  See Burnham v. Super. Ct. of Cal., 495 U.S. 604, 608–09 (1990) (plurality opinion); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997) ("A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings.").  A court should determine whether it has jurisdiction to bind a defendant before it rules against that defendant on the merits.  Republic of Panama, 119 F.3d at 940.

When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, a court may only exercise personal jurisdiction over an out-of-state defendant if it establishes that it has jurisdiction under the long-arm statute of the state in which it sits and under the Due Process Clause of the Constitution.[3]  See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996).

---

[3] Constitutional limits on the exercise of personal jurisdiction in a federal court are derived from the Fifth Amendment due process clause, but Fifth Amendment due process is coextensive with Fourteenth Amendment due process for jurisdictional purposes.  16 James Wm. Moore et al., Moore's Federal Practice § 108.120 (3d ed. 2007).

The Georgia long-arm statute provides in pertinent part for the exercise of personal jurisdiction over a non-resident who "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1). This subsection reaches to the maximum extent permitted by due process. See Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 279 Ga. 672, 675–76, 620 S.E.2d 352, 355 (2005).

If the state long-arm statute is satisfied, the court must then examine whether exercising jurisdiction over the defendant would violate constitutional due process. A court may exercise jurisdiction over a defendant consistent with due process only where there are minimum contacts between the defendant and the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation and internal quotations omitted). "The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Id. The Eleventh Circuit has articulated three criteria for evaluating minimum contacts in a case involving specific jurisdiction:

a defendant's contacts with the forum state must . . . be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and they must be such that the defendant should reasonably anticipate being haled into court there.

Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007) (citation and internal quotations omitted).

General personal jurisdiction "arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated" and requires "a showing of continuous and systematic general business contacts between the defendant and the forum state." Consol. Dev., 216 F.3d at 1292. The Eleventh Circuit has emphasized that the contacts "must be substantial in order to warrant the exercise of personal jurisdiction." Id.

When no evidentiary hearing is held, "[t]he plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009) (citation omitted). The defendant then must "raise[ ], through affidavits, documents or testimony[,] a meritorious challenge to personal jurisdiction." Sculptchair, 94 F.3d at 627 (citation and internal quotations omitted). If the defendant does so, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." Id. (citation and internal

quotations omitted). If the defendant's evidence conflicts with the plaintiff's, the district court must construe all reasonable inferences in favor of the plaintiff. <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 492 (11th Cir. 1988); <u>Delong Equip. Co. v. Washington Mills Abrasive Co.</u>, 840 F.2d 843, 845 (11th Cir. 1988) ("[w]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version" (citation and internal quotations omitted)).

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To withstand a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). The court must determine whether the plaintiff "has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible" the claims. <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1296 (11th Cir. 2007). The court construes the complaint in the plaintiff's favor, and accepts the facts it alleges as true. <u>M.T.V. v. DeKalb County Sch. Dist.</u>, 446 F.3d 1153, 1156 (11th Cir. 2006). However, "a formulaic recitation of the elements of a cause of action will not do," <u>Twombly</u>, 550 U.S. at 555, as "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, a wholly conclusory statement of a claim cannot, without more, survive a motion to dismiss. See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1303 (11th Cir. 2007) (citing Twombly, 550 U.S. at 561–62).

## III.  Analysis

The analysis below will first address Mr. Sanzone's Motion to Dismiss for Lack of Personal Jurisdiction before turning to the Motion to Dismiss for Failure to State a Claim.

### A.  Mr. Sanzone's Motion to Dismiss for Lack of Personal Jurisdiction

Mr. Sanzone argues that he is not subject to either general or specific personal jurisdiction because he does not have the requisite minimum contacts with Georgia. Mr. Sanzone filed an affidavit stating, *inter alia*, that (1) he has not directed any email or correspondence to individuals or entities in Georgia; (2) that he has not derived any revenue from goods or services sold in Georgia; (3) that he is a salaried employee of Toucan Capital, rather than a shareholder, officer, or director; (4) that he is not a shareholder, officer, director, or employee of Med-Relief; and (5) that he has no authority to hire or fire Med-Relief employees, determine their work schedules, or control Med-Relief's finances or operations. (See Aug. 14, 2009 Decl.

of Scott Sanzone ("Sanzone Decl.") ¶¶ 4, 11, 13–14, 16.) He also contends that he cannot be subject to personal jurisdiction based solely upon acts in Georgia taken in his corporate capacity. Finally, he claims that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

The Plaintiffs argue to the contrary that Mr. Sanzone is subject to personal jurisdiction in this state. They have filed an affidavit and supporting documents showing that Mr. Sanzone is a director of Georgia-based Med-Relief and that he exercised control over Med-Relief's financial operations, including compensation and termination for three Med-Relief employees who were Georgia residents. (See Decl. of James Naftel ("Naftel Decl.") ¶¶ 7, 13, 15 & Exs. A–D.)

In this case, construing all reasonable inferences in the Plaintiffs' favor, the Plaintiffs have carried their burden of establishing personal jurisdiction over Mr. Sanzone. Most of the key facts in Mr. Sanzone's August 14, 2009 affidavit have been contradicted by documents furnished by the Plaintiffs or by Mr. Sanzone himself.

First, Mr. Sanzone's statement that he has not directed any correspondence to individuals or entities in Georgia is refuted by two emails he sent to Mr. Naftel, a Georgia resident who worked at Med-Relief's office in Norcross, Georgia. The first email, sent on March 11, 2008, requested that Mr. Naftel provide data on financial statements and the number of full-time employees. (See Naftel Decl. Ex. C.) The

second email, sent on February 12, 2009, asked Mr. Naftel for detailed information about Med-Relief's unfunded 401(k) contributions. (Id. Ex. B.)

Second, Mr. Sanzone claims that he has not derived any revenue from goods or services sold in Georgia. However, Mr. Sanzone is listed on the Toucan Capital website as a principal of Toucan Capital Corporation.[4] (See Pls.' Resp. in Opp'n to Mr. Sanzone's Mot. to Dismiss Ex. B.) Mr. Sanzone's affidavit states that Toucan Capital is the sole shareholder of Med-Relief. (Sanzone Decl. ¶ 13.) In other words, Mr. Sanzone is a principal of Med-Relief's sole shareholder. It is therefore reasonable to infer that Mr. Sanzone benefitted financially from any goods or services that Med-Relief sold in Georgia.

Third, Mr. Sanzone asserted in his affidavit that he is a salaried employee of Toucan Capital, not an officer, director or shareholder. This statement is contradicted by the Toucan Capital website, which lists him as principal and chief financial officer. (See Pls.' Resp. in Opp'n to Mr. Sanzone's Mot. to Dismiss Ex. B.)[5]

_____

[4] The First Amended Complaint asserts that Defendant Toucan Capital Fund II, LP is also known as Toucan Capital Corporation. (First Am. Compl. ¶ 5.)

[5] In addition, Mr. Sanzone stated in his September 28, 2009 affidavit that his original statement was mistaken and that he is *not* a salaried employee of Toucan Capital. In his new affidavit, Mr. Sanzone claims to be an employee and officer of Toucan Management, LLC, an entity under contract to provide management services for Toucan Capital. Regardless of Mr. Sanzone's exact affiliation with the various Toucan entities, the Plaintiffs have offered evidence that Mr. Sanzone's job duties included responsibility for the financial

Fourth, Mr. Sanzone's claim that he is not a shareholder, officer, director, or employee at Med-Relief is contradicted by the minutes for the special meeting of Med-Relief's Board held on April 14, 2008. (See Naftel Decl. Ex. D.) Those minutes show that Mr. Sanzone was elected to the Med-Relief Board of Directors on that date.

Finally, Mr. Sanzone states that he has no authority to hire or fire Med-Relief employees, determine their work schedules, or control Med-Relief's finances or operations. However, this is contradicted by Mr. Sanzone's January 28, 2009 email confirming that Med-Relief's lease in Atlanta should be broken and the remaining four Med-Relief employees terminated. (See Naftel Decl. Ex. A.)

Even setting aside the portions of Mr. Sanzone's affidavits that have been controverted by the Plaintiffs, the remaining evidence in the record is sufficient to establish that Mr. Sanzone is subject to specific personal jurisdiction in Georgia. Because jurisdiction under subsection (1) of the Georgia long-arm statute is conterminous with constitutional due process, the following discussion proceeds directly to the "minimum contacts" analysis for specific personal jurisdiction.

First, Mr. Sanzone's contacts with Georgia are related to the causes of action alleged in the First Amended Complaint. In the Eleventh Circuit, the relatedness

_____

aspects of Med-Relief's operations. (See Naftel Decl. ¶ 7.)

inquiry is a fact-sensitive analysis that focuses on "the direct causal relationship among 'the defendant, the forum, and the litigation.'" Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1222 (11th Cir. 2009) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). The Plaintiffs' claims are based on the purported non-payment of wages and compensation owed to them, and they specifically allege that Mr. Sanzone is liable under the FLSA as an employer who exercised operational control of their employment, compensation, schedule, and workload. (First Am. Compl. ¶ 7.) Mr. Sanzone's position on the Board of Directors for Med-Relief further suggests that he was in a position to exercise control over Med-Relief's finances and operations. In addition, Mr. Sanzone communicated with Med-Relief and its employees in Georgia regarding their employment and compensation. For example, he sent an email to Mr. Naftel requesting information about Med-Relief's employee 401(k) balances so that he could fund the missing contributions. The allegations in the First Amended Complaint, Mr. Sanzone's director position at Med-Relief, and his communications with the forum are sufficient to establish a "direct causal relationship among 'the defendant, the forum, and the litigation.'" Oldfield, 558 F.3d at 1222.

Second, Mr. Sanzone's contacts with Georgia indicate "purposeful availment" of the privileges of the forum. The purposeful availment requirement is meant to

prevent the defendant from being haled into court "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted). In this case, Mr. Sanzone invoked the benefits and protections of the forum's law when he assumed responsibility for Med-Relief's financial operations and when he became a director of Med-Relief, a corporation organized under Georgia law. The emails he directed to Mr. Naftel provide further evidence that Mr. Sanzone purposefully availed himself of the privilege of doing business in Georgia. See Lowdon PTY Ltd. v. Westminster Ceramics, LLC, 534 F. Supp. 2d 1354, 1359 (N.D. Ga. 2008) (Shoob, J.) (finding purposeful availment where, *inter alia*, non-resident defendant conducted business in Georgia via emails directed to president of Georgia-based company).

Third, Mr. Sanzone's contacts with Georgia are such that he should have reasonably anticipated being "haled into court" here. Considering his involvement in and position of control over Med-Relief's finances and operations, he must have foreseen that his actions would affect this forum and potentially subject him to jurisdiction here. See Sturm v. Marriott Marquis Corp., 26 F. Supp. 2d 1358, 1373 (N.D. Ga. 1998) (Thrash, J.) ("It would defy common sense and logic to hold that the Individual Defendants could not reasonably anticipate being haled into a Georgia

court when they voluntarily decided to operate a Limited Partnership whose only purpose was the operation of a hotel located in Atlanta, Georgia.").

Once minimum contacts are established, the question becomes whether the maintenance of the suit would offend traditional notions of fair play and substantial justice. A court should look to "fairness factors" such as the burden on the defendant of litigating in the foreign forum, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering substantive social policies. See Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). In this case, Mr. Sanzone has not carried his burden of showing that the exercise of jurisdiction over him would offend notions of fair play and substantial justice. See Republic of Panama, 119 F.3d at 948. While Mr. Sanzone may have to travel a fair distance to defend himself in this forum, "modern methods of transportation and communication have significantly ameliorated" this burden. Sculptchair, 94 F.3d at 632. Even though the Plaintiffs may be able to obtain relief elsewhere, Georgia unquestionably has an interest in resolving disputes related to compensation owed in this state and ensuring that its

citizens receive the wages due to them. The other Defendants have not moved to dismiss on personal jurisdiction grounds, and it would be inefficient to require the Plaintiffs to pursue a separate lawsuit against Mr. Sanzone in another state. Considering the insubstantial burden upon Mr. Sanzone and Georgia's strong interest in having this case adjudicated here, the exercise of jurisdiction does not offend notions of fair play and substantial justice. Sturm, 26 F. Supp. 2d at 1374.

Finally, Mr. Sanzone argues that all of his contacts with Georgia were in his capacity as a corporate representative of Toucan Capital, and not in his individual capacity, and thus cannot support jurisdiction over him individually. Mr. Sanzone relies primarily on Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 784 (11th Cir. 2004), which states that "[a] nonresident individual cannot be subject to personal jurisdiction based solely upon acts in Georgia taken in his or her corporate capacity." However, this court has previously noted that "[t]he status of [the corporate capacity defense] is unclear post Innovative Clinical." Jimmy Smith Racing Tires, Inc. v. Ashleman, No. 1:05-CV-0970-JEC, 2006 WL 2699127 at *4 (N.D. Ga. Sept. 19, 2006) (Carnes, J.) ("[C]ontinuing to read a corporate capacity defense into Georgia's long-arm statute seems to 'unduly limit[ ] the literal language of O.C.G.A. § 9-10-91' in precisely the way the Georgia Supreme Court criticized in Innovative Clinical, 279 Ga. at 672, 620 S.E.2d at 353–54.").

In any event, <u>Club Car</u> does not stand for the proposition that a corporate representative can never be subject to personal jurisdiction. It merely requires courts to look at the nature and extent of the individual's contacts with the forum. The <u>Club Car</u> court went on to hold that jurisdiction could be properly asserted over a non-resident individual who was a principal and the primary shareholder of the non-resident company being sued, who had engaged in negotiating distribution agreements with the Georgia plaintiff, and who had derived substantial financial benefit from the distribution agreements. 362 F.3d at 784-85. In other cases before this court, sufficient minimum contacts have been found where corporate employees were personally involved in the transactions at issue. <u>See Jimmy Smith Racing Tires</u>, 2006 WL 2699127 at *8 ("Because Ashleman personally involved himself in negotiating the sales at issue in this litigation, he has established minimum contacts with the state of Georgia."); <u>Lowdon PTY Ltd.</u>, 534 F. Supp. 2d at 1359 ("[B]ecause Roberto Maniscalco personally involved himself in the transactions giving rise to Westminster's counterclaim, he has established minimum contacts with the state of Georgia."). In this case, the Plaintiffs have offered sufficient evidence to suggest that Mr. Sanzone was personally involved in the operation and control of Med-Relief's finances. Mr. Sanzone therefore may not rely on the corporate capacity defense to shield him from personal jurisdiction in this state.

In short, Mr. Sanzone's contacts with the forum are sufficient to subject him to personal jurisdiction in Georgia. His Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

**B.     Defendants' Motion to Dismiss for Failure to State a Claim**

The Defendants first move to dismiss the First Amended Complaint in its entirety, then argue that certain causes of actions should be dismissed. Each of the Defendants' arguments will be considered in turn.[6]

**1.     Entire First Amended Complaint**

The first ground for dismissal articulated by the Defendants is that the First Amended Complaint is devoid of any factual allegations to support the Plaintiffs' legal arguments that Med-Relief and Toucan operated as an "enterprise" or that the Plaintiffs were "employees" within the meaning of the FLSA.

The court is not required to accept as true the Plaintiffs' threadbare assertion that "Med-Relief and Toucan operated as an enterprise covered by the FLSA, as defined by 29 U.S.C. § 203(r) and 203(s)." (First Am. Compl. ¶ 9.) This assertion is simply a legal conclusion. This legal conclusion is, however, supported by other

---

[6] Many of these arguments were initially raised in the Defendants' first Motion to Dismiss, which was filed before Plaintiffs amended their Complaint. When the Defendants moved to dismiss the First Amended Complaint, they incorporated the arguments raised in their original Motion to Dismiss. The court thus considers the arguments from the Defendants' first Motion to Dismiss and applies them to the First Amended Complaint.

facts, such as the allegations that Med-Relief and Toucan Capital conducted business from offices in Norcross, Georgia and Bethesda, Maryland, respectively, and that Toucan Capital owns a controlling interest in Med-Relief.  This is enough factual matter to nudge the Plaintiffs' claims of FLSA violations "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

The Plaintiffs' use of the statutory label "employees" is also not a sufficient ground for dismissing the First Amended Complaint.  The First Amended Complaint lists the Plaintiffs' previous job titles at Med-Relief, thus providing sufficient facts to allege that the Plaintiffs were "individual[s] employed by an employer."  See 29 U.S.C. § 203(e)(1) (defining an employee as "any individual employed by an employer").

### 2.    FLSA Violations

The Defendants' second argument is that the Plaintiffs have failed to state a claim for FLSA violations because they have not alleged their employment dates, their non-exempt status, or the Defendants' level of operational control.

The Plaintiffs argue to the contrary that there is no question about what time periods are at issue.  They also contend that it is the Defendants' burden to prove that an exemption under the FLSA applies, and that the Defendants are improperly

attempting to shift the burden to the Plaintiffs. Finally, the Plaintiffs assert that they have adequately pleaded the Defendants' operational control.

Contrary to the Defendants' assertion, at this stage of the proceedings the Plaintiffs need not state the exact time periods worked. See, e.g., Jackson v. Pete's Painting of Cent. Fla., Inc., No. 6:08-cv-987-Orl-31GJK, 2008 WL 4327357, at *1 (M.D. Fla. Sept. 17, 2008) ("While Plaintiff did not state his rate of compensation, the number of hours that [he has] requested, and the time periods worked, he need not do so at this stage in the litigation." (citation and internal quotations omitted)); Morrow v. Green Tree Servicing, L.L.C., 360 F. Supp. 2d 1246, 1249–50 (M.D. Ala. 2005) ("The defendants seem to argue that Morrow must provide particular days upon which overtime pay was not paid; however this level of specificity, again, runs counter to the liberal standards of notice pleading."). The sole case upon which the Defendants rely, Siam v. Tampa Bay Downs, Inc., No. 8:09-cv-163-T-24 TBM, 2009 WL 997238 (M.D. Fla. Apr. 14, 2009), is distinguishable. The plaintiff in Siam alleged that she was not paid overtime for the period of approximately "November 2006 to May 2006." Because this time period does not exist, and because the plaintiff never responded to explain what period she was referring to, the court dismissed her complaint on the theory that the defendant "should not be forced to guess what period is at issue." Id. at *3. Here, the Defendants are not required to guess. The

Plaintiffs have alleged that they were not provided with any compensation during the final two pay periods leading up to their terminations in February 2009, and also that they did not receive overtime compensation during other periods of their employment with Med-Relief. These allegations are sufficient to give the Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.

While it is true that the First Amended Complaint does not expressly state that the Plaintiffs are non-exempt employees under the FLSA, the applicability of FLSA exemptions generally cannot be determined on a motion to dismiss. See, e.g., Ramirez v. Martinez, No. 08-21863-CIV, 2009 WL 199786, at *2 (S.D. Fla. Jan. 23, 2009) (although defendant argued for applicability of companionship service provider exemption, "we should not dispose of this largely factual question on the pleadings and without the benefit of factual development"); Reimnitz v. Source One Distribs., Inc., No. 06-81034-CIV, 2007 WL 1624778, at *3 (S.D. Fla. June 4, 2007) (declining to dismiss where there were "factual questions regarding whether Plaintiffs' duties fit within the [outside salesman] exemption or do not"); Herman v. Cont'l Grain Co., 80 F. Supp. 2d 1290, 1296 (M.D. Ala. 2000) (noting, in the context of the agricultural exemption, that "the question of exemption turns on the application of law to facts and, thus, is not an appropriate subject to be raised on a

Motion to Dismiss. This conclusion accords with those cases that have held that whether an employee is exempt under the Act involves substantial amounts of fact-finding before the court can resolve the ultimate legal question of exemption.").

The Defendants' reliance on Copley v. Florida Physicians Insurance Co., No. 8:07-cv-2100-T-30TGW, 2008 WL 544875 (M.D. Fla. Feb. 26, 2008), is unavailing. Under 29 U.S.C. § 213(a)(1), the Secretary of Labor is authorized to define who counts as an employee employed in a bona fide executive, administrative, or professional capacity. In 29 C.F.R. § 541.203(a), the Secretary specifically addressed insurance claims adjusters, listing their typical duties and explaining that these "generally meet the duties requirements for the administrative exemption." Because the plaintiff in Copley identified herself as an insurance claims adjuster, and because she failed to object to the defendant's argument that her job duties mirrored those set forth in 29 C.F.R. § 541.203(a), the Copley court dismissed the complaint. In contrast, the First Amended Complaint in this case provides only the Plaintiffs' job titles. It contains no information about their job duties. Within the four corners of the First Amended Complaint, there is insufficient information to establish that the Plaintiffs were employed in an executive, administrative, or professional capacity.

Finally, the Defendants complain that the First Amended Complaint does not specify their level of operational control. The Defendants rely on Ashby v. National

<u>Freight, Inc.</u>, No. 8:07-cv-898-T-30MSS, 2007 WL 3231803 (M.D. Fla. Oct. 30, 2007), in which FLSA claims were dismissed because the plaintiff failed to allege that the individual defendant was a corporate officer of the company, held a supervisory or managerial position, or exercised any type of operational authority over the plaintiff's compensation, schedule, or workload. <u>Id.</u> at *1. In contrast, the First Amended Complaint in the present case alleges that Ms. Powers and Mr. Sanzone "had operational control over Plaintiffs' employment, compensation, schedule and workload." (First Am. Compl. ¶¶ 6–7.) In addition, the Plaintiffs specifically allege that the "Defendants exercised the authority to: (a) hire and fire employees, including Plaintiffs, working on their behalf; (b) determine the work schedules for their employees; (c) control the finances and operations of the business enterprises known as MedRelief, Inc. and Toucan Capital." (<u>Id.</u> ¶ 8.) The First Amended Complaint also claims that Ms. Powers and Mr. Sanzone served as Med-Relief directors, served as corporate officers of both Toucan Capital and Med-Relief, and held both supervisory and managerial positions with the companies. (<u>Id.</u> ¶¶ 6–7.) Because these statements must be accepted as true on a motion to dismiss, the Plaintiffs have sufficiently alleged that Ms. Powers and Mr. Sanzone exercised operational control.

### 3.    Payment of Wages Under Georgia Law

The Defendants' third argument is that, insofar as the Plaintiffs are alleging

a violation of O.C.G.A. § 34-7-2, the Plaintiffs have not established that they are non-

exempt employees within the meaning of the statute.[7] The Defendants also contend

that the Plaintiffs' only employer was Med-Relief, and that the other Defendants

therefore cannot be held liable as employers.

The Plaintiffs argue to the contrary that the Defendants are again improperly

placing their burden of proving an exemption on the Plaintiffs, and that the

employee-employer relationship is an issue of fact which should be determined on

a motion for summary judgment.

O.C.G.A. § 34-7-2 requires companies to make wage and salary payments to

"skilled or unskilled wageworkers in manual, mechanical, or clerical labor,

including all employees except officials, superintendents, or other heads or

subheads of department who may be employed by the month or year at stipulated

salaries."   The Plaintiffs have not expressly stated that they are non-exempt

employees under O.C.G.A. § 34-7-2.  However, much like the FLSA exemptions

---

[7] The First Amended Complaint merely claims a violation of Georgia's wage law, without referencing a specific Code provision.  (See First Am. Compl. ¶¶ 22–26.)  However, the Plaintiffs' opposition brief does not deny that the Plaintiffs' claims are brought under O.C.G.A. § 34-7-2.  (See Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss First Am. Compl. 11–15.)

discussed above, the applicability of the exemption for "officials, superintendents, or other heads or subheads of departments" is a fact-intensive inquiry generally not suitable for determination on a motion to dismiss. For example, there is no information in the First Amended Complaint about whether the Plaintiffs were "employed by the month or year at stipulated salaries." O.C.G.A. § 34-7-2. Because the First Amended Complaint is devoid of information about the terms of the Plaintiffs' employment, it is not appropriate for the court to rule on the applicability of the exemption at this stage of the proceedings.

Contrary to the Defendants' assertions, the fact that the Plaintiffs held positions at Med-Relief does not mean that Toucan Capital, Ms. Powers, and Mr. Sanzone cannot also be liable as employers.

> Under Georgia law, '[t]he test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.'

Preston v. Settle Down Enters., Inc., 90 F. Supp. 2d 1267, 1277 (N.D. Ga. 2000) (Story, J.) (quoting Golosh v. Cherokee Cab Co., 226 Ga. 636, 637, 176 S.E.2d 925, 926 (1970)). Plaintiffs have alleged that all Defendants had "the right to control the time, manner, and method of executing the work." Id. For example, the First Amended Complaint

alleges that the "Defendants exercised the authority to: (a) hire and fire employees, including Plaintiffs, working on their behalf; (b) determine the work schedules for their employees; and (c) control the finances and operations of the business enterprises known as MedRelief, Inc. and Toucan Capital." (First Am. Compl. ¶ 8.) With regard to Ms. Powers and Mr. Sanzone specifically, the Plaintiffs claim that both of these individuals "had operational control over Plaintiffs' employment, compensation, schedule and workload." (Id. ¶¶ 6–7.) These statements are sufficient to allege an employee-employer relationship between the Plaintiffs and all Defendants, not just between the Plaintiffs and Med-Relief.

### 4. Money Had and Received

The Defendants' final argument is that the claim for money had and received consists entirely of legal conclusions and is devoid of the necessary facts.

The Plaintiffs argue to the contrary that they have alleged all the facts needed to state a claim.

Under Georgia law, a claim for money had and received "is comprised of the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." Fernandez v. WebSingularity, Inc., 299 Ga. App. 11, 13, 681 S.E.2d 717, 721 (2009) (citation and internal quotations omitted).

The First Amended Complaint alleges that Mr. Naftel loaned $105,670 of his own money to Med-Relief to cover expenses; that Mr. Naftel has demanded repayment; and that no portion of the loan has been repaid. (First Am. Compl. ¶¶ 16, 39.) No other factual allegations are necessary to state a claim for money had and received.

The Defendants' Motion to Dismiss for Failure to State a Claim is DENIED.

### C.    Motion for Permission to File a Response to Mr. Sanzone's Reply Brief

The Plaintiffs have moved for leave to file a surreply, arguing that Mr. Sanzone's reply brief included a supplemental affidavit with additional and modified factual assertions not raised in his original Motion to Dismiss.

Mr. Sanzone opposes the Motion for Permission to File, contending that his reply brief merely responded to arguments raised in the Plaintiffs' response brief and did not raise any new legal arguments.

Neither the Federal Rules of Civil Procedure nor the Local Rules of this court contemplate the routine filing of briefs following the movant's reply. See Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (Duffey, J.) (declining to permit surreply). "To allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." Garrison v. Ne. Ga. Med. Ctr., Inc., 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (O'Kelley, J.) (declining to permit surreply). Surreplies are accepted "only in unusual

circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review." Stephens v. Trust For Pub. Land, 475 F. Supp. 2d 1299, 1303 (N.D. Ga. 2007) (Story, J.). In this case, Mr. Sanzone's supplemental affidavit merely clarified facts already discussed in connection with his Motion to Dismiss or the Plaintiffs' opposition to that Motion. Additional briefing is unwarranted. The Plaintiffs' Motion for Permission to File a Response is DENIED.

## IV.  Summary

For the foregoing reasons, Mr. Sanzone's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 6] is DENIED; the Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. No. 7] is DENIED; the Defendants' Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. No. 17] is DENIED; and the Plaintiffs' Motion for Permission to File a Response to Defendant Scott Sanzone's Reply Brief [Doc. No. 21] is DENIED.

This case is assigned to a 4-month discovery term, beginning on the date of this Order.

IT IS SO ORDERED, this 3rd day of December, 2009.

                                        s/Beverly B. Martin
                                        BEVERLY B. MARTIN
                                        UNITED STATES DISTRICT JUDGE